negligent or willful acts or failures to act as a tax matters partner, provided that any indemnity under this subsection shall be provided out of and to the extent of Company assets only and no member shall have any personal liability on account thereof.

      (f)    All reasonable expenses incurred by the TMM in connection with any administrative proceeding before the IRS and/or judicial review of such proceeding, including reasonable attorneys' fees, shall be deemed a Company operating expense.

      (g)    Any member other than the TMM who wishes to participate in the administrative proceedings at the Company level may do so, but any legal, accounting or other expenses incurred by such member in connection therewith shall not be deemed a Company expense but shall be paid by such member.

## ARTICLE IV
## Management

    4.1.   Majority Vote. All management powers, authority and responsibilities are specifically reserved by the members, and management of all of the affairs of the Company shall be vested in its members in proportion to their then current LLC Interests. The decision of members by Majority Vote shall be controlling. Subject to the preceding sentence, the members shall use their best efforts to carry out the purposes and business of the Company pursuant to this Agreement and shall devote to the Company business such time as is reasonably necessary to carry out the provisions of this Agreement. No member or other person shall have the right, privilege or power to perform any act on behalf of the Company, including, without limitation, borrowing money or otherwise incurring indebtedness or liability or executing or delivering any notes, other evidences of indebtedness, contracts, agreements, assignments, leases, loan agreements, mortgages and other security instruments and deeds and all other documents and instruments, unless such act has been approved by Majority Vote or, where expressly stated, by Unanimous Vote. The votes of each member shall be equal to the LLC Interest owned by such member as set forth on Schedule A hereto; provided, however, that during such time as Anthony Latina, James T. Chandler, IV, and Chad H. Chandler own their respective interests in the Member companies, then all voting shall be on the basis of the following percentages: Anthony Latina, 18%; James T. Chandler, IV, 41%; and Chad H. Chandler, 41%.

    4.2.   Meetings of Members.

      (a)    Meetings of members for any purpose or purposes may be called at any time by one or more members. Written notice of any meeting so called shall be given to all members and shall state the place, date and hour of the meeting. Written notice of any meeting of members shall be given to each member in person, by telephone or telecopy or in writing at least forty-eight (48) hours (in the case of notice in person, by telephone or telecopy) or seventy-two (72) hours (in the case of notice by telegram) or five (5) days (in the case of notice by mail) before the time at which the meeting is to be held. If mailed, such notice shall be deemed to be given when deposited in the United States mail, postage prepaid, directed to the member at his address appearing on Schedule A hereto or to such other place as he directs by written notice to the Company and all other members.

CFH 00177

(b)    Meetings of members shall be presided over by a chairman designated by the members so present by Majority Vote. The chairman of the meeting may appoint any person to act as secretary of the meeting.

(c)    Each member may authorize another person or persons to act for him by proxy, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. A proxy shall be irrevocable if it states that it is irrevocable and if, and only so long as, it is coupled with an interest sufficient in law to support an irrevocable power. A member may revoke any proxy which is not irrevocable by attending the meeting and voting in person or by filing with the Company an instrument in writing revoking the proxy or by delivering a proxy in accordance with applicable law bearing a later date to the other members. Voting at meetings of members need not be by written ballot and, unless otherwise required by Unanimous Vote, need not be conducted by inspectors of election.

(d)    The Company may adopt such rules and regulations for the conduct of the meeting of members as it shall deem appropriate. Except to the extent inconsistent with such rules and regulations, the chairman of any meeting of members shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Company or prescribed by the chairman of the meeting, may include, without limitation, the following:

(i)    the establishment of an agenda or order of business for the meeting;

(ii)    rules and procedures for maintaining order at the meeting and the safety of those present;

(iii)    limitations on attendance at or participation in the meeting to members of record of the Company, their duly authorized and constituted proxies or such other persons as the chairman of the meeting shall determine;

(iv)    restrictions on entry to the meeting after the time fixed for the commencement thereof; and

(v)    limitations on the time allotted to questions or comments by participants. Unless and to the extent determined by the Company or the chairman of the meeting, meetings of members shall not be required to be held in accordance with the rules of parliamentary procedure.

(e)    Members may participate in a meeting thereof by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this Subsection (e) shall constitute presence in person at such meeting.

CFH 00178

(f)    Any action that may be taken at any meeting of the members may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing setting forth the action so taken shall be signed by members having not less than the minimum percentage of LLC Interests that is required to authorize or take such action under this Agreement and shall be delivered (by hand or by certified or registered mail, return receipt requested) to the Company by delivery to its registered office in the State of Delaware, its principal place of business, or the member having custody of the book in which minutes of proceedings of the members are recorded. Prompt notice of the taking of action without a meeting by less than unanimous written consent of members shall be given to those members who have not consented in writing.

(g)    The members may appoint in writing one or more members to execute contracts and otherwise implement the duly authorized decision of the members. The duly authorized acts of the duly appointed member(s) shall be binding on the company.

4.3.    <u>Compensation and Reimbursement of Members</u>. Except pursuant to existing agreements to which the Company is a party, or except as may be expressly provided for in this Agreement or hereafter approved by the members by Unanimous Vote, no payment will be made by the Company to any member for the services of such member or any member, shareholder, director, officer, employee, partner or agent of such member.

4.4.    <u>Contracts with Related Parties</u>. Agreements or other arrangements for the furnishing to or by the Company of goods or services with any person related to or affiliated with any member may be entered into by the Company provided such agreement or arrangement has been approved by the members by Unanimous Vote after the nature of the relationship or affiliation has been disclosed; provided, however, nothing in this Section 4.4 shall render invalid any such agreements or arrangements existing on the date hereof. For purposes of this Section 4.4, only the following persons shall be deemed to be "related to or affiliated with" a member:

(a)    Any Owning Person, which shall mean a person owning directly or indirectly more than five percent (5%) of the outstanding partnership interests of, or more than a five percent (5%) beneficial interest in, any member;

(b)    Any Owned Person, which shall mean a person more than five percent (5%) of the outstanding partnership interests in which, or more than a five percent (5%) beneficial interest in which, is owned directly or indirectly by any member;

(c)    Any Affiliated Person, which shall mean: (i) a person more than five percent (5%) of the outstanding partnership interests in which, or more than a five percent (5%) beneficial interest in which, is owned by an Owning Person or an Owned Person, and (ii) a person which owns more than five percent (5%) of the outstanding partnership interests of, or more than a five percent (5%) beneficial interest in, any Owning Person or any Owned Person; and

CFH 00179

(d)    Any agent, officer, director, employee, or partner (or any member of the family of any agent, officer, director, employee or partner) of any member, any Owning Person, any Owned Person, or any Affiliated Person.

4.5.    Other Business Activities.    Each of the members understands that the other members or their affiliates may be interested, directly or indirectly, in various other businesses and undertakings not included in the Company. Each member also understands that the conduct of the business of the Company may involve business dealings with such other businesses or undertakings. The members hereby agree that the formation of the Company and the assumption by the members of their duties hereunder shall be without prejudice to their rights (or the rights of their affiliates) to have such other interests and activities and to receive and enjoy profits or compensation therefrom, and each member waives any rights he or it might otherwise have to share or participate in such other interests or activities of the other members or their affiliates. The members may engage in or possess any interest in any other business venture of any nature or description independently or with others, including, but not limited to, the ownership, financing, leasing, operation, management, syndication, brokerage or development of real property and neither the Company nor the other members shall have any right by virtue of this Agreement in and to such other business venture or the income or profits derived therefrom. No member shall be required to give any notice to the other members of its interests, or the interest of any of its affiliates, in any other business or undertaking.

4.6.    Indemnifications.    None of the members shall take any action on behalf of or in the name of the Company, or enter into any commitment or obligation binding upon the Company, except for (a) actions expressly provided for in this Agreement, and (b) actions authorized by the members in the manner set forth herein. Each member shall indemnify and hold harmless the other members and their respective affiliates, shareholders, employees, directors and officers from and against any and all claims, demands, losses, damages, liabilities, lawsuits and other proceedings, judgments and awards, and costs and expenses (including but not limited to reasonable attorneys' fees) arising directly or indirectly, in whole or in part, out of any breach of the foregoing provisions of this Section 4.6 by such member or its affiliates, directors, shareholders, officers, agents or employees.

## ARTICLE V
## Dissolution and Winding-Up

5.1.    Dissolution.    The Company shall be dissolved and its affairs wound-up on December 31, 2075 or at such earlier time as:

(a)    provided under §18-801(a) of the Act;

(b)    provided however, that an event specified in §18-801(b) of the Act (a "Membership Termination Event") which has occurred with respect to a member, shall not cause the Company to be dissolved or required to be wound-up upon the occurrence of a Membership Termination Event if the business of the Company is continued by the consent of a majority of the remaining members within ninety (90) days after the occurrence of such Membership Termination Event;

CFH 00180

5.2.  Winding-Up and Liquidation.  The dissolution of the Company shall not release any party hereto from his contractual obligations under this Agreement. Upon the dissolution of the Company, one or more persons approved by Unanimous Vote shall have full authority, and shall proceed without any unnecessary delay, to wind up the Company's business, to sell or otherwise liquidate the assets of the Company, and to pay or make reasonable provision for the payment of all debts, liabilities and obligations of the Company, and to make distributions to members as provided herein. Any member may purchase all or any portion of the assets of the Company being liquidated so long as such purchase is approved by Unanimous Vote. The members shall continue to share profits and losses (as determined for federal income tax purposes), including Net Proceeds, during liquidation in the same proportions, as specified in Article 3.5 hereof, as before liquidation. Except as otherwise expressly provided herein, no member at any time shall have any obligation whatsoever to restore any deficit balance in his capital account. Each member shall be furnished with a statement prepared by the Company's accountant which shall set forth the assets and liabilities of the Company as of the date of dissolution. The proceeds of liquidation shall be distributed, as realized, in the following order and priority:

(a)  To the expenses of liquidation and to creditors of the Company, including members who are creditors, to the extent otherwise permitted by law, in satisfaction of the liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof), other than liabilities for which reasonable provision for payment has been made and liabilities for distributions to members; and

(b)  To members in accordance with the respective positive capital account balances of the members.

Any member with a deficit in his capital account immediately prior to any liquidating distributions shall restore such deficit capital account balance to zero in accordance with Treas. Reg. §1.704-1(b)(2)(ii)(b).

## ARTICLE VI
### Transfer, Additional Members and Resignation

6.1.  Transfer Restrictions.  No member shall sell, assign, transfer, hypothecate, pledge, grant any security interest in, encumber or otherwise dispose of (directly or indirectly, voluntarily or involuntarily) (hereinafter referred to collectively as "Transfer") all or any portion of his LLC Interest unless the member desiring to make the Transfer (hereinafter referred to as the "Transferor") shall have first made an offer to sell (hereinafter referred to as the "Offer to Sell") his LLC Interest in accordance with the provisions of this Agreement, including without limitation this Article VI and the price and terms required under Articles 6.8 and 6.9 hereof. Except as expressly stated in this Article VI to the contrary, in the event of any permitted Transfer of any LLC Interests in any manner, the transferee shall be deemed and shall be admitted as a substitute member as to such transferred LLC Interests only upon (i) the written consent of all members other than the Transferor, (ii) the transferee's written agreement to be bound by this Agreement by execution and delivery to the Company of a counterpart of this Agreement, and (iii) the payment to the Company of a fee sufficient to cover all reasonable expenses of the Company in connection

CFH 00181

with the transferee's admission as a member. No Transfer in violation of this Article VI shall be valid or effective and neither the Company nor any of the members shall recognize the same for purposes of making distributions. Neither the Company nor any member shall incur any liability as a result of refusing to make a distribution to the transferee of any such invalid Transfer.

6.2.    Offer to Sell. The Offer to Sell shall be made to the Company and to the members other than the Transferor (hereinafter referred to collectively as the "Remaining Members") in the manner hereinafter provided and shall state the price and the terms as hereinafter provided in this Article VI, including without limitation Sections 6.8 and 6.9 hereof; and to such Offer to Sell shall be attached a statement of intention to Transfer and the name and address of the prospective purchaser, assignee, transferee, lienor or other recipient of the proposed Transfer, the portion or amount of LLC Interest involved in the proposed Transfer and the terms of such Transfer.

6.3.    Transfer of Entire LLC Interest. If the Transferor proposes to Transfer all of his LLC Interest, the Offer to Sell shall be made first to the Company and then to the Remaining Members. If the Company does not agree to purchase all of the LLC Interest of the Transferor, all of the LLC Interest of the Transferor shall then be offered to the Remaining Members who shall have the option, among them, to purchase all or less than all of such LLC Interest. Each Remaining Member shall have the right to purchase the LLC Interest offered for sale in the same proportion as the LLC Interest owned by him at such date shall bear to the LLC Interests owned by all of the Remaining Members; provided, that if any Remaining Member does not wish to purchase his full proportionate share of the LLC Interest, the unaccepted portion of the Transferor's LLC Interest may, upon exercise of the option, be purchased by the other Remaining Members in such proportions as such other Remaining Members shall mutually determine; provided, further, that if the Remaining Members agree, among themselves, to purchase less than all of the Transferor's LLC Interest, then the Remaining Members shall notify the Company of the portion of the Transferor's LLC Interest not to be purchased by the Remaining Members and the Company may purchase all or part of such unaccepted portion thereof.

6.4.    Transfer of Less Than Entire LLC Interest. Where the Transferor intends to Transfer less than all of his LLC Interest, the Offer to Sell shall be made first to the Remaining Members and then to the Company. The Remaining Members shall have the option, among them, to purchase all or less than all of such LLC Interest offered, and each of the Remaining Members shall have the right to purchase the LLC Interest offered for sale in the same proportion as the LLC Interest owned by him at such date shall bear to the LLC Interests owned by all of the Remaining Members; provided, that if any Remaining Member does not purchase his full proportionate share of the LLC Interest, the unaccepted portion of the Transferor's LLC Interest may, upon exercise of the option, be purchased by the other Remaining Members in such proportions as the other Remaining Members shall mutually determine. If the Remaining Members do not purchase all of the LLC Interest offered by the Transferor, all of such unpurchased LLC Interest shall be offered to the Company.

6.5.    Acceptance by Company. Within sixty (60) days after the receipt of an Offer to Sell, the Company may, if under the terms of this Agreement it is the first to be offered

A-273

- 12 -

CFH 00182

the LLC Interest of the Transferor, by notice to the Transferor and to the Remaining Members, elect to purchase all of the LLC Interest of the Transferor. Such election may only be made by the affirmative vote or consent of Remaining Members owning of record not less than fifty-one percent (51%) of all of the LLC Interests then owned by all Remaining Members. If such Offer to Sell is not timely accepted by the Company, the Remaining Members or the Remaining Members and the Company, as the case may be, may within thirty (30) days after the last day upon which the Company could have elected to purchase all the LLC Interest of the Transferor, by notice to the Transferor and the Company, purchase all or less than all of the remaining LLC Interest offered, as hereinbefore provided. Any notice of acceptance of any Offer to Sell shall specify a date for the closing of the purchase, which date shall not be more than sixty (60) days after the date of giving of such notice. The closing shall take place at the principal office of the Company.

6.6.    Acceptance by Remaining Members. Within sixty (60) days after the receipt of an Offer to Sell, the Remaining Members may, if under the terms of this Agreement they are the first to be offered the LLC Interest of the Transferor, by notice to the Transferor and the Company, elect to purchase all or less than all of the LLC Interest so offered. If such offer is not timely accepted either totally or in part by the Remaining Members, the Company may, within thirty (30) days after the last day upon which the Remaining Members could have elected to purchase all or less than all of the LLC Interest so offered, by notice to the Transferor, purchase all or less than all of the remaining LLC Interest offered, as hereinbefore provided. The notice of acceptance of the Offer to Sell shall specify a date for closing of the purchase, which date shall not be more than sixty (60) days after the date of giving of such notice. The closing shall take place at the principal office of the Company.

6.7.    Rejection of Offer. If an Offer to Sell is not accepted in full by the Company and/or the Remaining Members, as the case may be, the Transferor may make a bona fide Transfer of the unaccepted portion of his LLC Interest to the prospective purchaser, assignee, transferee, lienor or other recipient named in the statement attached to the Offer to Sell (each of which is hereinafter referred to as a "Permitted Transferee"), but only in strict accordance with the terms therein stated. If the Transferor shall fail to make such Transfer within thirty (30) days following the expiration of the time provided in Articles 6.5 and 6.6 for the acceptance by the Company and/or the Remaining Members, whichever is last offered the LLC Interest, any such unaccepted portion of his LLC Interest shall again become subject to the terms and restrictions of this Agreement. If the Transferor shall make such Transfer within thirty (30) days following the expiration of the time provided in Articles 6.5 and 6.6 for the acceptance by the Company and/or the Remaining Members, whichever is last offered the LLC Interest, then the Transferor shall give written notice thereof to the Company and the other members, and each Permitted Transferee shall become a signatory hereto by executing and delivering to the Company a counterpart of this Agreement whereby such person shall be deemed to have adopted and to have agreed to be bound by all of the provisions of this Agreement; provided, however, no such Permitted Transferee shall be admitted as a substitute member unless all requirements for such admission set forth in Article 6.1 have been satisfied.

6.8.    Purchase Price. The purchase price of an LLC Interest, for all purposes of this Agreement, is the value derived in accordance with the formula set forth or otherwise stated in Schedule C attached hereto and made a part hereof.

CFH 00183

6.9.    _Payment of Purchase Price._  In all events, the purchase price of an LLC Interest, as determined under Article 6.8, shall be payable as follows: cash or cash equivalent equal to ten percent (10%) of the Purchase Price at the closing and the balance in no more than one hundred and twenty (120) equal monthly installments, with the first such installment being payable one (1) month after the closing, and the remaining installments being payable every month thereafter.  Any installment obligation (i) shall be represented by a promissory note of the Company or of the Remaining Members or surviving members, as the case may be, purchasing the LLC Interest, (ii) shall bear interest from the date of closing at the lowest rate required under §483 of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent United States federal law, and (iii) shall provide that the maker shall have the privilege of prepaying all or any part thereof at any time with interest to the date of prepayment, without premium or penalty, and that a default in the payment of any note shall cause the remaining unpaid notes of such maker, at the option of the holder of the note, to become immediately due and payable with interest rate of five percent (5%) greater than that stated in the note.

6.10.    _Pledge._  Whenever a person who purchases an LLC Interest under this Agreement fails to pay the entire purchase price in cash, he shall and does hereby grant to the Transferor or to the personal representative of a deceased member, as the case may be, a security interest in the LLC Interest being purchased (and the proceeds thereof), as security for any and all unpaid notes issued by such person under this Agreement with respect to such purchase.  Upon default in the payment of a note issued under this Agreement, the unpaid balance of the note relating to the sale shall, at the option of the holder of the note, become immediately due and payable.  Thereafter, the holder of the note shall have all of the rights and remedies of a secured party under applicable law, including the Delaware Uniform Commercial Code, as the same may from time to time exist.  While an LLC Interest shall be held in security pursuant to this Section 6.10, the purchaser thereof shall be entitled to all voting rights with respect thereto, and all distributions with respect thereto shall be applied against the next following unpaid installment of the purchase price.

6.11.    _Transfer of LLC Interest._  Upon the payment to the Transferor of the purchase price, the Transferor or personal representative shall assign and Transfer the LLC Interest of the Transferor or deceased member to the Company or purchasing member, as the case may be.  Such Transfer shall be recorded on the books of the Company and appropriate modifications to Schedule A to this Agreement shall be made.

6.12.    _Effective Date of Transfer._  Upon any permitted Transfer, unless otherwise agreed by the Transferor and transferee, the net profits, losses, distributions, net gains and net losses attributable to the LLC Interest so transferred shall be allocated between the Transferor and transferee as of the date set forth in the written transfer document.  Such allocation shall be based upon the number of days during the fiscal year of the Company that such LLC Interest was held by each such person, without regard to the results of the Company's activities while each was the holder.

6.13.    _Creditors of Members and Permitted Transferees_. To the fullest extent permitted by law, no creditor of any member (including, without limitation, any judgment creditor who obtains a charging order with respect to such member's LLC Interest under §18-703 of the

CFH 00184

Act) or Permitted Transferee shall, without the prior written consent of the specific act in each instance by all other members, be entitled to share in any profits or losses, receive any distribution or distributions, receive any allocation of income, gain, loss, deduction or credit or similar item or acquire, possess or exercise any right to participate in the management of the business and affairs of the Company to which such member or Permitted Transferee, as the case may be, was, is, or will be entitled under the Act, this Agreement or otherwise. No creditor who obtains any interest in or rights with respect to all or any portion of the LLC Interest of a member or Permitted Transferee shall be admitted as a member of the Company, or have or acquire any rights of a member (including, without limitation, any right to participate in the management of the business and affairs of the Company), unless such creditor is admitted as a substitute member in accordance with Article 6.1 of this Agreement.

6.14. <u>Forfeiture of Management Rights</u>. Notwithstanding anything herein to the contrary, if a Member or assignee Transfers or purports to Transfer (directly or indirectly, voluntarily or involuntarily, by operation of law [including without limitation by merger, consolidation, conversion, share exchange or similar transaction] or otherwise) the Interest of such Transferor, in whole or in part, without obtaining the written consent of all other Members, such Member (or assignee) and any Transferee/Assignee thereof shall upon such event of Transfer or purported Transfer have with respect to such Interests no voting rights or management rights, including without limitation any right to vote on an amendment to this Agreement, the dissolution of the Company, the transfer or continuance of the Company, the conversion, share exchange, merger or consolidation of the Company, the sale of all or substantially all of the assets of the Company.

**ARTICLE VII**
<u>Ownership of Members</u>

7.1. <u>Criteria Regarding Ownership of a Member</u>. Each of the Members is a corporation, currently owned and controlled, in the case of Corleto-Latina Funeral Home, Inc. ("Corleto-Latina"), by Anthony Latina; in the case of James T. Chandler & Son, Inc. ("Chandler"), by James T. Chandler; IV, and Chad Chandler (sometimes referred to as "Owner").

It is in the mutual interest of all parties that the voting control of a Member not be transferred by the current Owners in any way, including at death, without the prior written consent of the other Member.

The Members wish to establish criteria under which an individual would be qualified to become eligible to be an Owner of a Member (referred to as "Qualified Successor"). The criteria are: (a) that this individual has worked outside of the funeral services business of the Member for at least three (3) years; (b) that the individual has received a college degree from an accredited school or shall be enrolled in an accredited college program; and (c) that the individual has a funeral director's license or is strongly encouraged to pursue a license.

These criteria (a) apply to all individuals, and especially to family members (meaning lineal descendants of the above-mentioned Owners of the Members); and (b) are established with the thought that any family member who becomes an employee of a Member would likely become an

A-276
- 15 -

CFH 00185

Owner or senior employee of the Member with whom the Company will have to work and/or interact on a continuing basis. Not each of the criteria need be met in order for an individual to qualify for consideration; however, criteria (a) is required to be met. The criteria may only be changed by a Unanimous Vote of the Members.

7.2    Death of an Owner.  Notwithstanding the foregoing, if an Owner should die, than the following shall control the disposition of such Owner's ownership interest in the Member.

(a)    If the deceased Owner is Anthony Latina then his ownership interest in Corleto-Latina may be transferred to a Qualified Successor, as described above; but if there is no Qualified Successor, then the other Member (Chandler Group) shall have the option to purchase Anthony Latina's ownership interest in Corleto-Latina in accordance with the provisions appearing in Article VI.

(b)    If the deceased owner is James T. Chandler IV or Chad Chandler then his ownership interest in Chandler may be transferred to the survivor of them or to a Qualified Successor; but if both of James T. Chandler IV and Chad Chandler are deceased and/or if there is no Qualified Successor, then Anthony Latina shall have the option to purchase their ownership interest in Chandler in accordance with the provisions appearing in Article VI.

## ARTICLE VIII
## Miscellaneous

8.1.    Notices.  Unless otherwise expressly provided in this Agreement, all notices and other communications required or permitted to be given under this Agreement to any person shall be in writing and personally delivered or sent by mail, postage prepaid, to such person at his address appearing on Schedule A hereto, or to such other place as he directs by written notice addressed to all other members, and to the Company at the Company's principal office, and shall be deemed to have been served at the time of personal delivery or mailing, as the case may be.

8.2.    Integrated Agreement.  This Agreement constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and understandings relating thereto.

8.3.    Severability.  In the event any provision of this Agreement or any application thereof is invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions hereof and any other application thereof shall not in any way be affected or impaired thereby.

8.4.    Amendments.  This Agreement may be amended, supplemented, revoked or terminated only by a written agreement signed by all of the members.

8.5.    Construction.  Wherever the context permits, the use of any gender shall be deemed to include all genders and the singular shall include the plural and vice versa.

CFH 00186

8.6.    <u>Successors.</u>  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and, except as may be otherwise provided herein, their respective executors, administrators, heirs, permitted assigns and all other successors in interest.

8.7.    <u>Partition.</u>  The members hereby agree that no member, nor any successor to any member, shall have the right while this Agreement remains in effect to have any property of the Company partitioned, or to file a complaint or institute any proceedings at law or in equity to have the property of the Company partitioned, and, to the fullest extent permitted by law, each member, on behalf of itself and its successors in interest, hereby waives any such right.

8.8.    <u>Remedies Cumulative.</u>  The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive its right to use any or all other remedies.  Said rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance, or otherwise.

8.9.    <u>Failure To Pursue Remedies.</u>  The failure of any party to seek redress for violation of, or to insist upon the strict performance of, any provision of this Agreement shall not prevent a subsequent act, which would have originally constituted a violation, from having the effect of an original violation.

8.10.    <u>Captions.</u>  Titles or captions of sections and subsections contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

8.11.    <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts with the same effect as if all parties had signed the same document.  All counterparts shall be construed together and shall constitute one agreement, binding on all of the parties.

8.12.    <u>Governing Law.</u>  This Agreement and the rights, remedies and obligations of the parties hereunder, and of their heirs, successors and permitted assigns, shall be governed by and interpreted in accordance with the laws of the State of Delaware, and all rights, remedies and obligations shall be governed by such laws without regard to principles of conflicts of laws.

8.13.    <u>Securities Act Investment Covenant.</u>  Each member represents and warrants that he is acquiring his interest in the Company for his own account, and not with a view to resale or distribution thereof within the meaning of the Securities Act of 1933, as amended, and that no such interest will be sold, transferred, hypothecated, or assigned by him in contravention of the Securities Act of 1933, as amended, or any applicable state Blue Sky or securities statute.

CFH 00187

IN WITNESS WHEREOF, the undersigned, intending to be bound hereby, have duly executed this Agreement as of the _____ day of _____,2001.

INITIAL MEMBERS:

JAMES T. CHANDLER & SON, INC.

By: _____(SEAL)

CORLETO-LATINA FUNERAL HOME, INC.

By: _____ (SEAL)

CFH 00188

Schedule A

| Member Name | Capital Contribution | LLC Interest |
|---|---|---|
| James T. Chandler & Son, Inc. | $2,900,000 | 82% |
| Corleto-Latina Funeral Home, Inc. | $500,000 | 18% |

**INITIAL MEMBERS:**

JAMES T. CHANDLER & SON, INC.

By: _____ (SEAL)

CORLETO-LATINA FUNERAL HOME, INC.

By: _____ (SEAL)

A-280
A-1

CFH 00189

Schedule B

Leases of Those Real Properties Known as:

1)    2506 Concord Pike, Wilmington, Delaware;

2)    7230 Lancaster Pike, Hockessin, Delaware; and

3)    808 Union Street, Wilmington, Delaware.

CFH 00190

Schedule C

CERTIFICATE OF VALUE
OF
FUNERAL SERVICES OF DELAWARE, INC.

The value of the Company shall be its value as of the close of business on the date of the event which triggers an option or obligation to purchase. The value shall be determined under paragraph 1 below or if it is inapplicable, then it shall be determined under paragraph 2 below:

(1)    Written Designation. First, there may be from time to time attached hereto one or more pages of paper, each of which pages shall be marked Addendum to Schedule C. The Company and the holders of all Voting Interests may from time to time, after the execution of this Agreement, by mutual assent, designate on such Addendum, the value of the Company. Each such designation shall be dated as of the date it is added to such Addendum and shall be signed by the Company and the holders of all Voting Interests.

(a)    If the value designated on the most recently dated such Addendum after the execution of this Agreement is within a 36-month period beginning on the effective date of the valuation stated and ending on the date of an event which triggers an option or obligation to purchase, then the value which was last added to such Addendum within the first year and then appreciated, plus interest on such value at 4% per annum for the time elapsed since the end of the first year following the effective date of such statement of value, shall be the value of the Company;

(b)    If there has been no Addendum signed by all the holders of all Voting Interests (determined as of the time of such signing) within a 36-month period beginning on the effective date of the valuation stated and ending on the date of an event which triggers an option or obligation to purchase hereunder, then the fair market value shall be determined through appraisal as set forth below.

(2)    Appraisal. The holder of the Interest being disposed of (the "Transferor Shareholder") shall designate one arbitrator within 30 days of notifying the Company of his intent or obligation to dispose of his interest. The Company shall designate a second arbitrator, and these two arbitrators shall designate a third arbitrator. It shall be the duty of the arbitrators to determine the value of the Company in accordance with the techniques generally accepted within the financial community with respect to the valuation of similarly situated small businesses. The decision of a majority of the three arbitrators working together shall be conclusive as to the value of the Company. The cost of the arbitrators shall be shared evenly by the Transferor Shareholder and the Company. This arbitration provision shall be enforced and interpreted pursuant to Title 10 of the Delaware Code § 5701.

CFH 00191

IN WITNESS WHEREOF, the undersigned, representing all of the Members of the above named entity, intending to be bound hereby, have duly executed this certificate of valuation, in duplicate, as of the _1st_ day of _June_, 2001.

**INITIAL MEMBERS:**

JAMES T. CHANDLER & SON, INC.

By: _____ (SEAL)

CORLETO-LATINA FUNERAL HOME, INC.

By: _____ (SEAL)

A-283
C-2

CFH 00192

# ADDENDUM TO SCHEDULE C

The Total Value of the Company as of _June 1_____, 2001 is (with the value of an LLC Interest being the stated % on Schedule A multiplied by the Agreed Value)

Fair Market Value       $ _3.4 million_

Total Debt              $ _45,200 —_

Agreed Value            $ _3,354,800 —_

JAMES T. CHANDLER & SON, INC.

By _____

By _____ (Seal)

CORLETO LATINA FUNERAL HOME, INC.

By _____ (Seal)

A-284